# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **ILYA MITELBERG, individually and on behalf of all others similarly situated,** | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 2:20-CV-5748 |
| v. | ) ) | Hon. Susan D. Wigenton |
| **THE TRUSTEES OF THE STEVENS INSTITUTE OF TECHNOLOGY,** | ) ) ) | (Oral Argument Requested) |
| Defendant. | | |

## REPLY BRIEF IN SUPPORT OF
## THE TRUSTEES OF THE STEVENS INSTITUTE OF TECHNOLOGY'S
## MOTION TO DISMISS THE AMENDED COMPLAINT

Angelo A. Stio III
Michael E. Baughman
**TROUTMAN PEPPER HAMILTON
SANDERS LLP**
301 Carnegie Center, Suite 400
Princeton, New Jersey 08543
(609) 951-4125

*Attorneys for Defendant The Trustees of the
Stevens Institute of Technology*

# TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................... i

TABLE OF AUTHORITIES .............................................................................. ii

INTRODUCTION ............................................................................................. 1

LEGAL ARGUMENT ....................................................................................... 2

I.   Plaintiff's claims are for educational malpractice because they require the Court to assess the quality of Stevens' virtual education. ................................................................................... 2

II.  Plaintiff has not alleged a specific enforceable promise to support the breach of contract claim. ................................................... 7

III. The reservation of rights provisions in Stevens' Academic Catalog and Course Scheduler dispose of the breach of contract claim. ................................................................................ 10

IV.  Plaintiff's unjust enrichment, conversion, and money had and received claims fail............................................................................. 13

V.   Plaintiff cannot sue Stevens because he was not a party to any claimed contract. ................................................................................ 14

CONCLUSION ................................................................................................ 15

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Ansari v. New York University*, 1997 WL 257473 (S.D.N.Y. May 16, 1997) ..................................................................................................6

*Behne v. Union City College*, 2018 U.S. Dist. LEXIS 12994 (D.N.J. Jan. 26, 2018)..........................................................................................11

*Beukas v. Bd. of Trustees of Farleigh Dickinson Univ.*, 255 N.J. Super. 552 (Law Div. 1991), aff'd, 255 N.J. Super. 420 (App. Div. 1992) ...................................................................................................11, 12

*Bradshaw v. Pennsylvania State Univ.*, Civil Action No. 10-4839, 2011 U.S. Dist. LEXIS 36988 (E.D. Pa. 2011) ...................................................14

*Campus Assocs. L.L.C. v. Zoning Bd. of Adjustment of Tp. of Hillsborough*, 413 N.J. Super. 527, 996 A.2d 1054 (Super. Ct. App. Div. 2010) ..................................................................................15

*Cross v. Univ. of Toledo*, 2020 Ohio Misc. LEXIS 121 (Oh. Ct. Cl. July 8, 2020).........................................................................................6

*Cruz v. Seton Hall*, 2012 U.S. Dist. LEXIS 96005 (D.N.J. July 10, 2012) ...................................................................................................11

*David v. Neumann Univ.*, 177 F. Supp. 3d 920 (E.D. Pa. 2016) ............................14

*Deen v. New School*, 2007 U.S. Dist. LEXIS 25295 (S.D.N.Y 2007) ....................11

*Garland v. W. Mich. Univ.*, 2020 Mich. Ct. Cl. LEXIS 7 (Mich. Ct. Cl. Sept. 15, 2020) .....................................................................................6, 7

*Gourdine v. Felician College*, 2006 N.J. Super. Unpub. LEXIS 1792 (App. Div. Aug. 15, 2006)..........................................................................11

*Hernandez v. Don Bosco Preparatory High*, 322 N.J. Super. 1 (App. Div. 1999) ..................................................................................................5

*McDermott v. Ohio State Univ.*, 2020 Ohio Misc. LEXIS 127 (Oh. Ct. Cl. Aug. 24, 2020) ..................................................................................6

*Mellowitz v. Ball State University*, 2020 Ind. Super. LEXIS 854 (Ind. Sup. Ct. Aug. 14, 2020) ..........................................................................7

*Milanov v. Univ. of Mich.*, 2020 Mich. Ct. Cl. LEXIS 1 (Mich. Ct. Cl. July 27, 2020)..........................................................................................6

*Mittra v. Univ. of Med. & Dentistry of N.J.*, 316 N.J. Super. 83 (App. Div. 1998) ........................................................................................9

*Moe v. Seton Hall University*, 2010 WL 1609680 (D.N.J. Apr. 20, 2010) ....................................................................................................5, 8, 9

*Mucci v. Rutgers*, 2011 U.S. Dist. LEXIS 21580 (D.N.J. Mar. 3, 2011) .................9

*Nickerson v. Quaker Group*, 2008 WL 2600720 (N.J. Super. App. Div. July 3, 2008) ..............................................................................4

*Pinkston v. Univ. of S. Fla. Bd. of Trs.*, 2019 U.S. Dist. LEXIS 51153 (M.D. Fla. Mar. 27, 2019).....................................................................8

*Rosado v. Barry Univ. Inc.*, No. 12020 WL 6438684 (S.D. Fla. Oct. 30, 2020) ..............................................................................................7

*Salerno v. Fla. S. Coll.*, 2020 WL 5583522 (M.D. Fla. Sept. 16, 2020)..................7

*Smith v. The Ohio State University*, 2020 WL 5694224 (Oh. Ct. Cl. Sep. 09, 2020) ............................................................................6

*Stein-O'Brien v. Pennington School*, 2008 U.S. Dist. LEXIS 2856 (E.D. Pa. 2008).....................................................................................3

*Swidryk v. Saint Michael's Medical Center*, 201 N.J. Super. 601 (Ch. Div. 1985) .........................................................................................2

*Town of Kearny v. New Jersey Rail Carriers*, LLC, 2005 WL 2363101 (App. Div. Sept. 28, 2005)..................................................................14

*Uddin v New York University*, 6 N.Y.S.3d 900 (N.Y. App. Term 2014) ................15

*Waitt v. Kent State University*, 2020 WL 5894543 (Oh. Ct. Cl. Sep. 28, 2020) ............................................................................................6

*Williams v. Board of Education of Paterson*, 2017 WL 3131974 (D.N.J. July 21, 2017)............................................................................5

*Xiaolu Peter Yu v. Vassar College*, 97 F. Supp. 3d 448 (S.D.N.Y. 2015) ................................................................................................8

*Zahn v. Ohio Univ.*, 2020 Ohio Misc. LEXIS 230 (Oh. Ct. Cl. Oct. 19, 2020) ................................................................................................6

*Zumbrun v. University of Southern California*, 25 Cal. App. 3d 1 (1972) ...............................................................................................15

**RULES**

N.J. Court Rule 4:26-1 ............................................................................15

**INTRODUCTION**

It is clear from Plaintiff's opposition that his claims are based on a fundamental misunderstanding of New Jersey ("NJ") law. Plaintiff believes (i) a student-university relationship is contractual in nature, and (ii) an implied agreement can be based on isolated provisions from university publications. Neither of these positions are accurate representations of NJ law and therefore all of Plaintiff's claims fail. Similarly, Plaintiff offers no credible response to Stevens' reservation of rights provisions, which demonstrates Plaintiff's claims lack support.

Plaintiff's claims also fail because NJ law does not recognize educational malpractice as a cognizable cause of action. Plaintiff ignores NJ case law recognizing that (i) the educational malpractice ban applies to contract-based claims, and (ii) courts must scrutinize the underlying allegations in the pleading and not rely on labels applied by plaintiffs' counsel in determining whether a claim is one for educational malpractice. When Plaintiff's allegations and relief are carefully considered, it is crystal clear that Plaintiff is challenging the quality of the virtual education that Stevens provided following the Governor's mandatory closure order due to COVID-19. Under NJ law, when a claim requires a court to engage in a qualitative analysis of the education that a college provides, the claim is for educational malpractice and not cognizable.

Finally, in recognition of the weakness of his claims, Plaintiff seeks to paint Stevens as a villain but, here too, Plaintiff is wrong. In the middle of a once-in-a-

lifetime global pandemic, Stevens incurred great expense to support its students and the faculty who teach them by quickly mobilizing resources and making investments to transition to a secure and functional virtual learning environment. Courses continued to be taught, students continued to earn credits, and Stevens continued to provide an array of educational services virtually. Stevens also made CARES Act funds available and raised funds through its Stevens Rises Relief Fund to support students facing financial hardships.

As explained below, there is no basis in law, in fact, or in equity for the claims that Plaintiff asserts here. Accordingly, the Amended Complaint must be dismissed.

## LEGAL ARGUMENT

**I.   Plaintiff's claims are for educational malpractice because they require the Court to assess the quality of Stevens' virtual education.**

In his brief, Plaintiff contends his claims are not for educational malpractice but instead are based on "whether defendants promised to provide services and failed to do so." Pl. Br. 8. This argument is legally and factually flawed. Under NJ law, a plaintiff cannot rely on creative pleading to avoid the educational malpractice prohibition; instead, courts are required to look behind the label applied to a cause of action and assess whether the substance of a claim sounds in educational malpractice. *Swidryk v. Saint Michael's Medical Center*, 201 N.J. Super. 601, 603 (Ch. Div. 1985) (because "there is no cause of action for educational malpractice either in a tort or contract claim," the plaintiff's styling of a claim as a breach of contract is a

"mere characterization" to be disregarded "to achieve substantial justice"). And, if a claim, whether cast as a tort or a contract, requires a court to judge the quality of the education provided, then it constitutes educational malpractice and is prohibited. *Id.* at 603–05 (holding that claims alleging a lack of supervision or poor quality of education are not permitted); *Stein-O'Brien v. Pennington School*, 2008 U.S. Dist. LEXIS 2856, at *19 (E.D. Pa. 2008) (finding "breach of contract claims based on inadequate or ineffective educational services" as "comparable to a tort claim for educational malpractice").

Although Plaintiff argues that he is asserting claims for the breach of a promise unrelated to the quality of education, his Amended Complaint states otherwise. This is not a case where Plaintiff's daughter failed to receive an education. It is a case where Plaintiff is suing because he is not satisfied with the education that was provided.  Indeed, the Amended Complaint is rife with allegations second-guessing the quality of the education that Stevens provided. Plaintiff alleges that the remote instruction Stevens provided was "subpar in practically every aspect," was "not even remotely worth the amount charged," and was "in no way the equivalent of the in-person instruction that Plaintiff and the putative class members contracted and paid for." Am. Compl. ¶¶ 13, 38–39. According to Plaintiff, the remote instruction Stevens provided was inferior because it lacked "face to face interaction with professors, mentors, and peers," "access to facilities such as libraries, laboratories, com-

puter labs, and study rooms," and the opportunity for "[h]ands on learning and experimentation," among other allegations. *Id.* ¶ 39; *see also* Mov. Br. 20–21. Plaintiff ignores these allegations because they demonstrate his claims require the court to engage in a qualitative analysis of the education Stevens provided during the Spring semester.

The relief Plaintiff requests further demonstrates this case is about the quality of the education Stevens provided. Plaintiff claims he is seeking a refund of the "prorated portion of tuition and fees, proportionate to the amount of time that remained in the Spring Semester 2020 when classes moved online and campus services ceased being provided." Am. Compl. ¶ 17. This relief is predicated on the false notion that students received literally nothing of value from March 12, 2020 until the end of the semester. But even Plaintiff admits that his daughter (who is still enrolled at Stevens and taking classes remotely) continued to receive an education and earn academic credit for this period of time. Accordingly, any alleged damages would have to be discounted by the value of that education. *Cf. Nickerson v. Quaker Group*, 2008 WL 2600720, at *18 (N.J. Super. App. Div. July 3, 2008) (contract damages do not permit a plaintiff to be in a "better position" than if there had not been a breach). That would require the Court to analyze the difference in value between in-person instruction prior to March 12, 2020 and the remote instruction after March 12, 2020. That analysis would differ across majors, schools, and class years, among other factors,

and would lead inevitably to the Court assessing the quality of Stevens' education, which is exactly the inquiry that NJ's ban on educational malpractice prohibits.

Plaintiff's argument that he has not alleged educational malpractice is based almost entirely on out-of-state cases, and the only NJ cases he cites are not on point. *Williams v. Board of Education of Paterson*, 2017 WL 3131974 (D.N.J. July 21, 2017), involved a wrongful death action—not a contract action—brought by the estate of a student who died after jumping from a moving school bus. *Id*. at *1. The claim was not for educational malpractice because it involved a "breach of a duty of care with respect to a student's physical safety." *Id*. at *2. Plaintiff's reliance on *Moe v. Seton Hall Univ.*, 2010 WL 1609680 (D.N.J. Apr. 20, 2010), also is misplaced. *Moe* did not, as Plaintiff states, hold that a plaintiff could sue a school for "failing to comply with its policies and procedures concerning grading disputes and leaves of absence." Pl. Br. 9. Rather, the plaintiff in *Moe* entered into an individual, written agreement with the defendant university allowing her to reenter a program following her dismissal, an agreement that the court held "may be enforced quite apart from any provisions of the student manual." *Id*. at *5. Moreover, Plaintiff's claim that *Moe* stands for the proposition that, under NJ law, "a student can sue a school for breach of contract, subject to the same contract law as any other contracting party," Pl. Br. 2 n.1, is bracingly wrong.  *Moe* recognized that NJ **does not** rigidly apply contract principles to a student-university relationship. *Id.* at *4 ("'New Jersey courts have declined to characterize the relationship between student and university as

[purely] contractual.'" (alteration in original) (quoting *Hernandez v. Don Bosco Preparatory High*, 322 N.J. Super. 1, 18 (App. Div. 1999))). Because NJ does not consider the student-university relationship contractual in nature, Plaintiff's pronouncement that this case involves a "standard commercial business decision," Pl. Br. 15, is misinformed at best.

The out-of-state cases that Plaintiff cites are not persuasive. *Ansari v. New York Univ.*, 1997 WL 257473, at *3 (S.D.N.Y. May 16, 1997), is distinguishable because the school allegedly breached express promises to provide specific services. *Id.* Plaintiff's string-cite of orders denying motions to dismiss in other, non-NJ, pandemic-related refund cases reflects far less of a consensus than he suggests. Pl. Br. 2. The five decisions from Ohio, all of which were decided by two judges, denied the motions to dismiss with little analysis largely because of a more lenient pleading standard under Ohio law. *See, e.g.*, *Waitt v. Kent State Univ.*, 2020 WL 5894543, at *2 (Oh. Ct. Cl. Sep. 28, 2020) (McGrath, J.); *Smith v. The Ohio State Univ.*, 2020 WL 5694224, at *2 (Oh. Ct. Cl. Sep. 09, 2020) (McGrath, J.); *McDermott v. Ohio State Univ.*, 2020 Ohio Misc. LEXIS 127, at *4–5 (Oh. Ct. Cl. Aug. 24, 2020) (McGrath, J.); *Cross v. Univ. of Toledo*, 2020 Ohio Misc. LEXIS 121, *6 (Oh. Ct. Cl. July 8, 2020) (Crawford, J.); *Zahn v. Ohio Univ.*, 2020 Ohio Misc. LEXIS 230, at *5 (Oh. Ct. Cl. Oct. 19, 2020) (Crawford, J.). The two state court decisions from Michigan considered arguments about university autonomy under the Michigan Constitution, not educational malpractice arguments, and certainly not arguments

arising under NJ law. *Milanov v. Univ. of Mich.*, 2020 Mich. Ct. Cl. LEXIS 1, *8 (Mich. Ct. Cl. July 27, 2020); *Garland v. W. Mich. Univ.*, 2020 Mich. Ct. Cl. LEXIS 7, *6 (Mich. Ct. Cl. Sept. 15, 2020). With regard to the two Florida cases Plaintiff cites, the opinion in *Rosado v. Barry Univ. Inc.*, No. 12020 WL 6438684, at *1 (S.D. Fla. Oct. 30, 2020), does not discuss educational malpractice, and both cases applied Florida law allowing implied-in-fact contract claims against colleges and universities, which NJ does not allow, *id*. at *3–4; *Salerno v. Fla. S. Coll.*, 2020 WL 5583522, at *4–5 (M.D. Fla. Sept. 16, 2020); Mov. Br. 23–25. And *Mellowitz v. Ball State Univ.*, 2020 Ind. Super. LEXIS 854, *1 (Ind. Sup. Ct. Aug. 14, 2020), is a one-sentence order containing no analysis at all. Because each of these cases relies on law other than the law of NJ, they are inapposite.

In sum, when the Court applies NJ law and ignores Plaintiff's creative pleading, the allegations in the Amended Complaint reveal that Plaintiff is challenging the quality and value of the education that Stevens provided. As such, these claims are for educational malpractice and must be dismissed.

## II.   Plaintiff has not alleged a specific enforceable promise to support the breach of contract claim.

In its moving brief, Stevens demonstrated that Plaintiff did not identify a contract he had with Stevens, let alone a contract in which Stevens promised to provide in-person instruction. Mov. Br. 21–29. Plaintiff does not challenge this statement; he instead contends the promise of in-person instruction arises from an implied contract based on provisions in Stevens' Academic Catalog and Course Schedule, which

outline the days, times, instructors, and locations of classes. Pl. Br. 16–18. When subject to scrutiny, this implied contract theory is fatally flawed.

First, Plaintiff's implied contract theory fails because it is based on a misrepresentation that NJ courts "recognize[ ] that the relationship between a university and its students to provide an education is contractual in nature." Pl. Br. 15. Plaintiff cites *Moe* for this statement but, as explained above, NJ courts do ***not*** treat this relationship as purely contractual. *See* p. 4, *supra*. Because NJ courts have declined to characterize the student-university relationship as contractual in nature, the Florida and New York cases cited by Plaintiff are inapposite, as those jurisdictions treat the relationship as contractual. *See, e.g., Xiaolu Peter Yu v. Vassar College*, 97 F. Supp. 3d 448, 481 (S.D.N.Y. 2015); *Pinkston v. Univ. of S. Fla. Bd. of Trs.*, 2019 U.S. Dist. LEXIS 51153, at *10 (M.D. Fla. Mar. 27, 2019).

Second, the NJ cases that Plaintiff cites actually undermine Plaintiff's implied contract theory. Plaintiff states that NJ courts "have found contractual obligations arising from provisions found in university publications, similar to the instant case." Pl. Br. 18 (*quoting Moe*, 2010 WL 1609680, *5). This is false. As discussed above, in *Moe*, there was a signed written agreement between the student and the university that related to discipline and due process rights. *Id.* *5. The court found that it could look at the provisions in a student manual as a source to determine the scope of the rights found in the signed written agreement. *Moe*, 2010 WL 1609680, *5. Plaintiff

does not seek to enforce a signed written agreement here and this case does not concern due process rights.

In addition, Plaintiff's reliance on *Mucci v. Rutgers* is misplaced. *See* 2011 U.S. Dist. LEXIS 21580, *58–60 (D.N.J. Mar. 3, 2011). In *Mucci*, the implied agreement was not based on isolated provisions from a university publication, but on NJ state law due process requirements implicit in the relationship between a public university (which Stevens is not) and students. *Id.* at *56, *60.[1] In addition, the implied contract claim in *Mucci* was dismissed because NJ courts "defer to the university's broad discretion in its evaluation of academic performance." *Id.* at *57. Plaintiff does not allege any state law requirements that apply in this case.

Third, Plaintiff provides no support for his argument that dismissal of the breach of implied contract claim would be premature. Pl. Br. at 20. The three cases Plaintiff relies upon (*Troy v. Rutgers*, *Haverty v. Andres & Berger, P.C.*, and *Reynolds v. Palnut Co.*) all involve implied contracts arising in the employment context. The NJ Appellate Division has refused to extend employer-employee implied contractual principles to a university-student relationship. *See Mittra v. Univ. of Med. & Dentistry of N.J.*, 316 N.J. Super. 83, 90 (App. Div. 1998).

---

[1] Contrary to Plaintiff's arguments, *Mucci* also recognizes that in NJ "the relationship between the university and its students should not be analyzed in purely contractual terms." *Id.* at 57.

Finally, Plaintiff's attempt to equate the language in university publications to an unconditional implied promise to deliver in-person instruction rings hollow. The Academic Catalog's references to days, times, instructors, and locations of courses do not constitute unconditional promises, particularly when the first page of the catalog contains an express reservation of rights provision. *See* p. 11, *infra*. Stevens' "attendance policy" states only that students "are expected to attend all classes." Am. Compl. ¶¶ 7–8. This attendance can occur regardless of whether classes are taught in-person or virtually. Moreover, the requirement that an undergraduate student obtain permission to take more than two on-line courses in a semester does not equate to a guarantee of in-person instruction, particularly when a global pandemic and Executive Order required Stevens to quickly transition to a virtual learning environment in order to allow students to continue their academic progress uninterrupted. The Faculty Handbook that Plaintiff references only requires faculty to be present at classes, Am. Compl. ¶ 9; it does not promise in person instruction and does not mean that Stevens' existing faculty did not have to continue to teach their courses virtually.

## III.   The reservation of rights provisions in Stevens' Academic Catalog and Course Scheduler dispose of the breach of contract claim.

Plaintiff's implied contract claim also fails because Stevens' Academic Catalog contains express language on the first page stating, among other things, that course schedules, the content of courses, and calendars in the catalog are subject to

change.[2] Mov. Br. 25–27. NJ courts have recognized that this type of reservation of rights language disposes of quasi-contractual rights claims. *See id.* at 25–26 (citing *Beukas v. Bd. of Trustees of Farleigh Dickinson Univ.*, 255 N.J. Super. 552, 556 (Law Div. 1991), *aff'd*, 255 N.J. Super. 420 (App. Div. 1992); *Gourdine v. Felician College*, 2006 N.J. Super. Unpub. LEXIS 1792, at *4 (App. Div. Aug. 15, 2006); *Cruz v. Seton Hall*, 2012 U.S. Dist. LEXIS 96005 (D.N.J. July 10, 2012).

To try to neutralize this significant body of case law, Plaintiff cites to a footnote from *Behne v. Union City College,* 2018 U.S. Dist. LEXIS 12994, at *3 n.2 (D.N.J. Jan. 26, 2018), which found the phrase "subject to change" too ambiguous to alter a public university's fair procedures for discipline. *Id.* *21. *Behne* has no applicability where, as here, the reservation of rights provision is far more extensive and states that Stevens has the right to "change the information, regulations, requirements, procedures and policies announced in this catalog including but not limited to: requirements for admission; graduation or degrees; scheduling; credit or content of courses; fees; and calendars." Stio Decl, Ex. I at 1.[3]

---

[2] The Undergraduate Registration Policy contains reservation of rights language on its first page as well. Mov. Br. 25; Stio Decl., Ex. K.

[3] *Deen v. New School*, 2007 U.S. Dist. LEXIS 25295 (S.D.N.Y 2007), does not help Plaintiff. *Deen* was decided under New York law which, unlike NJ law, recognizes that (i) a student-university relationship is contractual and (ii) implied agreements can arise from university publications. *Id.* at *7.

-11-

The weakness in Plaintiff's argument is evidenced by the inconsistent position he takes to try to overcome Stevens' reservations of rights. On one hand, Plaintiff claims that a promise for in-person instruction can be implied from statements about the time and location of courses found in Stevens' Academic Catalog and Course Scheduler. Pl. Br. 16–18. Then, when faced with Stevens' express reservation of the right to change courses and schedules, Plaintiff contends this express language must be disregarded because Stevens does not "specifically notify students that their in-person, on-campus classes may move online halfway into the semester and that Defendant will do so while retaining 100% of tuition and fees." Pl. Br. 24. In other words, Plaintiff argues that Stevens needs to specifically reserve the right to hold classes virtually, even though Stevens never specifically promised in-person instruction in the first place. A similar argument was rejected by the court in *Beukas*, 255 N.J. Super. at 556 (***granting a motion to dismiss*** and finding "[e]ven if we assume, for analytical purposes, that the various University bulletins constituted an enforceable contract, that contract would include the reservation of rights.).[4]

---

[4] Likewise, any implied contract would also include the express language in Stevens Tuition and Fee Policy, which states unequivocally that the General Service Fee and Student Activity Fee at issue in the Amended Complaint are imposed for "courses on campus, web and for students enrolled in Co-op." Mov. Br. 28. Plaintiff's suggestion that this statement is untrue ignores the express language from the very document he claims forms the basis for his implied contract.

Equally absurd is Plaintiff's attempt to analogize this case to a hurricane that caused the cancellation of classes and a claim of impossibility. Pl. Br. 22. This analogy fails because classes were not cancelled. Am. Compl. ¶ 33. On the contrary, Stevens went to great expense and effort to quickly transition to a virtual learning environment so that courses could continue to be taught, services could be provided, and Plaintiff's daughter could continue to earn credits for the tuition she paid.[5]

## IV.   Plaintiff's unjust enrichment, conversion, and money had and received claims fail.

Plaintiff's equitable claims fail because they are predicated on the same non-existent promise to provide in-person instruction as his breach of contract claims. *See* Pl. Br. at 11. Put another way, if the Court concludes as a matter of law that Stevens did not promise to provide in-person instruction, then Plaintiff's unjust enrichment, conversion, and money had and received claims should be dismissed as well because they are based on the same predicate.

These equitable claims also fail because Plaintiff does not adequately allege that Stevens unjustly or inequitably retained the tuition and fees that were paid. Indeed, there is nothing inequitable about Stevens' treatment of the tuition and fees because it was consistent with Stevens' Tuition and Fee Policy. Further, transition-

---

[5] Throughout his brief, Plaintiff contends that Stevens retained 100% of tuition and fees. This is false. Stevens refunded all students their pro rata share of housing and dining plan fees for the Spring semester. *See* Am. Compl. ¶ 19.

ing to a virtual learning environment allowed Stevens to continue to fulfill its charitable educational mission and it allowed students to pursue their degrees uninterrupted and graduate at the same time they would have in the absence of the pandemic. As Stevens explained in its moving brief, there is no basis for an equitable claim here because Plaintiff's daughter was given the opportunity to attend classes for which tuition was paid. *See* Mov. Br. 31 (citing *David v. Neumann Univ.*, 177 F. Supp. 3d 920, 927 (E.D. Pa. 2016); *Bradshaw v. Pennsylvania State Univ.*, Civil Action No. 10-4839, 2011 U.S. Dist. LEXIS 36988, *5 (E.D. Pa. 2011)). Plaintiff does not address these cases.

## V.   Plaintiff cannot sue Stevens because he was not a party to any claimed contract.

Plaintiff does not dispute Stevens' contention that his daughter is not a plaintiff in this action. His brief refers only to "Plaintiff" in the singular, not plural, and he asserts that only "Plaintiff — not his daughter — paid" tuition to Stevens. Pl. Br. 35. Even if Stevens' Academic Catalog and Course Scheduler could give rise to an implied contract under NJ law—and they cannot—the party to that contract would be Plaintiff's daughter, who attended Stevens' and registered and attended classes. And unless he is a third-party beneficiary of that purported contract, which Plaintiff does not claim, he cannot sue to enforce it. *Town of Kearny v. New Jersey Rail Carriers*, LLC, 2005 WL 2363101, at *3 (App. Div. Sept. 28, 2005); Mov. Br. 35–36.

The authorities on which Plaintiff relies are irrelevant. *Campus Assocs. L.L.C. v. Zoning Bd. of Adjustment of Tp. of Hillsborough*, 413 N.J. Super. 527, 534, 996 A.2d 1054, 1057 (Super. Ct. App. Div. 2010), considered standing under Rule 4:26-1, a separate question from who has the right to sue to enforce a claimed contract. *Uddin v New York University*, 6 N.Y.S.3d 900, 900–01 (N.Y. App. Term 2014), is a one-paragraph per curiam order that did not consider whether the parent had a contractual right to sue. The plaintiff in *Zumbrun v. University of Southern California*, 25 Cal. App. 3d 1, 11 (1972), was the student herself, so the reference to a parent's right to sue quoted by Plaintiff is dictum. Plaintiff's vague references to societal expectations or divorce cases do not change black-letter New Jersey contract law.

## CONCLUSION

For the foregoing reasons, Stevens respectfully requests that the Court dismiss Plaintiff's Amended Complaint in its entirety with prejudice.

Date: November 16, 2020         **TROUTMAN PEPPER HAMILTON**
                                **SANDERS LLP**
                                *Attorneys for Defendant The Trustees of the*
                                *Stevens Institute of Technology*


                        By:   */s/ Angelo A. Stio III*
                                Angelo A. Stio III
                                Michael E. Baughman